# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

PHOENIX ENTERTAINMENT
PARTNERS, LLC,

    Plaintiff,

v.                                              Case No: 8:16-cv-3361-T-30JSS

KEVIN BURKE,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon Defendant Kevin Burke's Motion to Dismiss for Failure to State a Claim (Doc. 19) and Plaintiff Phoenix Entertainment Partners, LLC's Response in Opposition (Doc. 20). Upon review, the Court concludes that Defendant's motion should be granted.

## BACKGROUND

For years, Phoenix Entertainment Partners, LLC ("PEP") and its predecessor in interest, Slep-Tone Entertainment Corporation, have produced and sold karaoke accompaniment tracks under the trademark "Sound Choice." The Sound Choice-branded tracks are "wildly popular" because they provide highly accurate singing cues and are faithful to the sound of the original recording artist.

PEP sells its karaoke tracks exclusively in compact disc format. However, it is technologically possible to convert the tracks from the compact discs into digital files. Easy electronic duplication of these files has resulted in widespread copying and distribution of

Sound Choice-branded tracks without corresponding purchases of the compact discs. As a result, PEP has lost revenue from the sale and licensing of its karaoke tracks.

PEP has filed a number of lawsuits around the country against karaoke bars and karaoke disc jockeys ("DJs") that it believes are playing pirated Sound Choice-branded tracks at karaoke shows. Of note, PEP alleges that these entities are infringing its trademarks[1] and not any copyrights it might have. In this action specifically, PEP sued Kevin Burke ("Burke"), a karaoke DJ, for trademark infringement and unfair competition in violation of the Lanham Act, as well as for related state law violations.

PEP's theory of Lanham Act liability goes as follows. When Burke plays pirated Sound Choice-branded karaoke tracks during his karaoke sessions at bars, the bar patrons see the tracks' graphic component, which displays not only the tracks' song lyrics but also PEP's "Sound Choice" trademark and trade dress. Displaying PEP's trademark causes confusion regarding both the source of Burke's goods (i.e., the karaoke tracks) and services (i.e., his karaoke entertainment services). Bar patrons will think that the karaoke tracks Burke plays originated with PEP and not the person who copied the tracks into digital files. In addition, the bar patrons will mistakenly think that PEP has sponsored or approved of Burke's karaoke services.

Burke responded to PEP's Complaint (Doc. 1) by filing the instant motion, arguing that PEP's federal claims should be dismissed in light of recent appellate decisions from

---

[1] PEP owns the trademark "Sound Choice" and the service mark "Sound Choice." It uses the former to designate its compact discs and the latter when "conducting entertainment exhibitions in the nature of karaoke shows."

the Seventh and Ninth Circuits. The courts in both cases held that, as a matter of law, conduct identical to Burke's did not constitute a violation of the Lanham Act.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted). It must also construe those factual allegations in the light most favorable to the plaintiff. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (internal citation omitted).

To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Pleadings that offer only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," will not do. *Twombly,* 550 U.S. at 555.

**DISCUSSION**

**I.      Lanham Act Claims**

The Lanham Act makes actionable "the deceptive and misleading use of [trade]marks" (i.e., the names or symbols used to identify a person's goods or services and to distinguish them from those sold by others). 15 U.S.C. § 1127; *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003). PEP asserts claims under sections 32 and

3

43 of the Act. Section 32 creates liability for trademark infringement when a person "use[s] in commerce any reproduction . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . ." 15 U.S.C. § 114(a). Section 43 imposes liability for unfair competition on a "person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, . . . or any false designation of origin, . . . which— (A) is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods [or] services . . . ." 15 U.S.C. § 1125(a)(1).

The goal of trademark law is not to promote creativity and invention but rather to foster fair competition. *Rumsey*, 829 F.3d at 825. "[B]y preventing competitors from copying a source-identifying mark, trademark law reduces the customer's costs of shopping and making purchasing decisions[] and helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." *Dastar*, 539 U.S. at 34 (internal quotation marks and citation omitted). Trademark law contrasts with copyright law, which instead promotes the development of creative works by granting the author the exclusive right to perform, display, and copy the work for a finite period of time. *Rumsey*, 829 F.3d at 825. Whereas copyright law is concerned with the unauthorized copying of an author's creative work, trademark law focuses on the likelihood a consumer will be confused when making purchasing decisions. *See id*.

There is a split of authority regarding whether Burke's alleged conduct constitutes trademark infringement or unfair competition under the Lanham Act. Burke cites to recent

4

decisions from the Seventh and Ninth Circuits to argue that it does not. *See Slep-Tone Entm't Corp. v. Wired for Sound*, 845 F.3d 1246 (9th Cir. 2017); *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817 (7th Cir. 2016). In contrast, PEP points to district court opinions in the Eleventh Circuit that have allowed PEP's claims to proceed despite similar motions to dismiss.[2] *See Phoenix Entm't Partners v. Milligan, Inc.*, No. 8:16-cv-3433-T-17JSS (M.D. Fla. March 20, 2017); *Phoenix Entm't Partners v. George and Wendy's Tropical Grill, LLC*, No. 2:16-cv-852-FtM-99MRM, 2017 WL 881826 (M.D. Fla. March 6, 2017); *Phoenix Entm't Partners v. Aguayo*, No. 2:16-cv-449-FtM-38CM (M.D. Fla. Oct 24, 2016). The Court finds the reasoning in the Seventh and Ninth Circuit decisions to be more persuasive.

In determining that PEP had failed to state a claim under the Lamham Act, the Seventh and Ninth Circuits drew from the Supreme Court's reasoning in *Dastar*. In that case, Fox sued Dastar for "reverse passing off" a television series as its own. *Dastar*, 539 U.S. at 27. Fox argued that Dastar falsely designated the origin of its goods (i.e., the television series) when Dastar made minor changes to the series, repackaged it, and then sold the series as its own product without acknowledging its nearly wholesale reliance on Fox's series. *Id*. at 31. The Supreme Court emphasized the important differences between trademark and copyright law and cautioned against "overexten[ding]" trademark law into

---

[2] The Eleventh Circuit has not yet ruled on this issue. Although PEP cites to a 2013 decision in which the Eleventh Circuit upheld damages in a similar action filed by Slep-Tone, the Eleventh Circuit did not consider whether the Lanham Act supported a determination of liability because Slep-Tone did not appeal the district court's determination of liability. *See Slep-Tone Entm't Corp. v. Johnson*, 518 F. App'x 815 (11th Cir. 2013). This Court is of course bound by any relevant Eleventh Circuit precedent.

the realm of copyright. *Id*. at 33-34. It then held that the Lanham Act did not impose liability under these circumstances because the "goods" whose "origin" matters under the Act are the "tangible good[s] sold in the marketplace" and not the creative content or "ideas that 'goods' embody or contain." *Id.* at 31-32.

Thus, in evaluating PEP's claim of trademark infringement in *Rumsey*, the Seventh Circuit asked itself "what the tangible good at issue is, and whether the unauthorized use of [PEP's] marks (including trade dress) might cause consumers to be confused about who produced that good." 829 F.3d at 828. If the consumers' confusion is not about who produced the tangible good offered for sale, or if their "real confusion" is about "the source of the creative content contained within that good," then their confusion is not actionable under the Lanham Act. *Id*.

Here, as in *Rumsey*, the "goods" that PEP alleges that Burke is falsely passing off as PEP's are the unauthorized digital copies of the Sound Choice-branded karaoke tracks (i.e., digital files).[3] If Burke were offering to sell the digital files to the bar patrons on compact discs wrapped in Sound Choice packaging or on a website offering downloads of Sound Choice-branded tracks, the bar patrons might indeed be confused about the source of a good offered for sale. Here, however, PEP does not allege that Burke is selling the digital files or that the bar patrons are buying them. Indeed, the bar patrons are far removed from the files—they do not see them, nor do they know whether the files are stored on a

---

[3] The Court will assume that a digital file counts as a tangible good for purposes of the trademark infringement analysis. *Rumsey*, 829 F.3d at 828.

6

compact disc, a hard drive, or the internet. Their only experience with the files is with their creative content. Thus, any confusion the patrons might have regarding the karaoke tracks' source would have to be about the "source of their creative content" and "not . . . the source of the tangible good sold in the marketplace, as *Dastar* requires." *Id*. at 828-29.

This does not end the Court's analysis, however, because PEP alleged trademark infringement relating to Burke's provision of both goods *and* services. PEP argues that when Burke plays pirated karaoke tracks that display PEP's "Sound Choice" trademark, bar patrons will incorrectly believe that PEP has sponsored Burke's karaoke services. The Court is unconvinced.

Because PEP allows anybody to buy its compact discs, karaoke DJs other than "Sound Choice" DJs can buy and play Sound Choice-branded karaoke tracks. If the Court accepted PEP's argument that the sole act of playing the Sound Choice-branded tracks caused consumers to believe that PEP sponsored a DJ's karaoke services, all karaoke DJs who play Sound Choice-branded tracks would be liable for trademark infringement—even those who acquired the tracks lawfully. This cannot be the case.

The fact that the "Sound Choice" trademark "is embedded in the creative content of the karaoke track and is visible to the public whenever the track is played does not falsely suggest that [PEP] is endorsing the performance . . . so long as [the] mark is not overtly used to market the performance." *Rumsey*, 829 F.3d at 829-30. Because PEP does not allege that Burke markets himself as a "Sound Choice" DJ or in any way uses the "Sound Choice" trademark to promote his karaoke business, the bar patrons have no reason to think that PEP sponsors his karaoke services.

7

The Court understands PEP's frustration with the unauthorized copying of its Sound Choice-branded karaoke tracks. However, "[t]he unauthorized copying of a creative work is typically the province of copyright law." *Rumsey*, 829 F.3d at 842. The Court will not overextend trademark law to cover grievances that are more properly dealt with by copyright law. As the Ninth Circuit aptly noted in *Wired for Sound*, PEP's "attempt to stuff copyright claims into a trademark container fails." 845 F.3d at 1248.

**II.     State Law Claims**

In addition to filing Lanham Act claims, PEP alleges that Burke engaged in deceptive or unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act and the common law. The Court declines to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. section 1367(c)(3).

For the foregoing reasons, it is ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 19) is granted with respect to Plaintiff's Lanham Act claims.
2. Plaintiff's Lanham Act claims are dismissed with prejudice.
3. The Court declines to exercise jurisdiction over Plaintiff's state law claims.
4. The Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida, on June 19, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record